IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INKIT, INC., <br><br> Plaintiff, <br><br> v. <br><br> AIRSLATE, INC., <br><br> Defendant. | Civil Action No. 23-793-RGA |

MEMORANDUM ORDER

Before me is Plaintiff Inkit's Motion to Dismiss and Strike. (D.I. 22). I have considered the parties' briefing. (D.I. 23, 29, 32). For the reasons set forth below, this motion is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

The Amended Answer (D.I. 20) is the operative answer to Inkit's complaint (D.I. 2). Inkit previously sued Defendant airSlate alleging various trademark infringement and unfair competition claims based on unauthorized and deceptive use of the INKIT word mark. (*See Inkit, Inc. v. airSlate, Inc.*, No. 23-232-RGA, D.I. 1 (D. Del. Mar. 2, 2023)). The parties resolved the case by entering a Settlement Agreement (D.I. 3) on May 1, 2023. (No. 23-232-RGA, D.I. 5). The Settlement Agreement includes the following provisions:

> 2. airSlate's Obligations. In addition to transmission of the Settlement Payment, airSlate agrees to the following obligations:
>
> (a) airSlate shall not use or publicly display or cause others to use or publicly display the Mark, in any form or manner, including without limitation in airSlate's web-based or other advertising, that infringes upon or otherwise violates Inkit's rights in the Mark; and

1

> (b) airSlate shall not bid on the keywords that are the same as or confusingly similar to the Mark (the "Prohibited Keywords") listed on internet search engines (including without limitation, Google® and Bing®) or other online platforms for a period of five (5) years from the Effective Date (the "Prohibited Bidding Period"). airSlate shall have a grace period of thirty (30) days from the Effective Date to implement any measures necessary to ensure compliance with this provision. In the event that after the conclusion of the grace period airSlate bids on the Prohibited Keywords, airSlate shall have ten (10) days from the date on which airSlate becomes aware of such a bid or is notified by Inkit of such a bid to remove any advertisements associated with such a bid. In the event that airSlate bids on the Prohibited Keywords seven (7) or more times during the Prohibited Bidding Period, airSlate shall be in material breach of this Settlement Agreement regardless of whether such advertisements are removed.
>
> . . . .
>
> 5. <u>Confidentiality.</u>   This Settlement Agreement and its terms shall be kept confidential, except that the Parties may disclose the fact of this Settlement Agreement and that its terms are confidential, and may further disclose this Settlement Agreement to any governmental authorities to whom disclosure is required, to auditors, insurers, reinsurers, legal and financial advisors and accountants to the extent necessary to receive professional advice or as part of any transaction involving a Party and then, in each such case, only if such persons are expressly made aware of this confidentiality provision.
>
> 6. <u>Specific Performance; Injunction.</u>   Notwithstanding the Paragraphs titled "Confidentiality" and "Dismissal and Release", or as otherwise set forth herein, in the event a Party is alleged to have breached this Settlement Agreement, or if any action or proceeding relating to this Settlement Agreement is initiated, this Settlement Agreement will be admissible in any such action or proceeding. Nothing in this Settlement Agreement affects or impairs any of the Parties' ability to enforce this Settlement Agreement, or to seek any remedy or enforce any rights arising from or relating to this Settlement Agreement or a breach thereof pursuant to Section 7 below. . . .

(D.I. 3 §§ 2(a)–(b), 5–6).

Inkit filed the present action on July 21, 2023, alleging breach of the Settlement Agreement due to continuing deceptive use of the INKIT mark on airSlate's website. (*See* D.I. 2 ¶¶ 19–41). Along with its Complaint, Inkit filed a sealed copy of the Settlement Agreement, in which Inkit redacted Inkit's banking information but nothing else. (D.I. 3). Inkit later filed a "redacted version" of the Settlement Agreement that is identical to the sealed filing. (D.I. 7).

2

airSlate filed its Amended Answer, asserting among other defenses, various equitable defenses as its first affirmative defense. (D.I. 20 at 9). airSlate also raised counterclaims of breach of the implied covenant of good faith and fair dealing (Count I), rescission/reformation (Count II), and breach of contract (Count III). (D.I. 20 ¶¶ 17–32). Inkit moves to dismiss all airSlate's counterclaims and to strike airSlate's first affirmative defense.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely

3

consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

Rule 9 adds a heightened pleading standard for allegations of fraud or mistake. It states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Rule 9(b) requires a complainant to plead "all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (quoting *In re Burlington*, 114 F.3d at 1422) (internal quotation marks omitted). While courts have relaxed the requirements where the factual information is peculiarly within the defendant's knowledge or control, boilerplate and conclusory allegations will not suffice. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). "Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *Id.* A counterclaim or affirmative defense that alleges fraud or mistake must be pled with particularity under Rule 9(b). *See, e.g., Sonos, Inc., v. D&M Holdings Inc.*, 2016 WL 4249493, at *5 (D. Del. Aug. 10, 2016).

### B. Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "When ruling on a motion to strike, 'the [c]ourt must construe all facts in favor of the nonmoving party and deny the motion if the defense is sufficient under law.'" *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 402 (D. Del. 2009) (quoting *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 697 F. Supp. 1360, 1362 (D. Del. 1988)). "However, a court is not

required to accept affirmative defenses that are mere 'bare bones conclusory allegations,' and may strike such inadequately pleaded defenses." *Id.* at 408 (quoting *Cintron Beverage Grp., LLC v. DePersia*, 2008 WL 1776430, at *2 (E.D. Pa. Apr. 15, 2008)). "A motion to strike a defense should not be granted 'unless the insufficiency of the defense is clearly apparent.'" *Id.* at 402 (quoting *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986), *rev'd on other grounds*, 505 U.S. 504 (1992)).

## III. DISCUSSION

### A. Counterclaim Counts I and II

airSlate's breach of the implied covenant of good faith and fair dealing and rescission/reformation counterclaims are based on the same underlying allegations of mistake. (*See* D.I. 20 ¶¶ 9–14, 18, 24–25). As the counterclaims rely on allegations of mistake, they must comply with the Rule 9(b) pleading standard.

airSlate's allegations boil down to the following: at some point, between the filing of the first lawsuit on March 2, 2023 and execution of the Settlement Agreement on May 2, 2023, Inkit and airSlate reached an agreement for the inclusion of the same notice and cure provision for Section 2(a) of the Settlement Agreement that is present in Section 2(b), but failed to include it in the contract due to a drafting mistake. (*Id.*). airSlate fails to plead with sufficient particularity the "who, what, when, where and how" of the events at issue." *In re Rockefeller*, 311 F.3d at 217; *cf. Ajay Endeavors, Inc. v. Divvymed, LLC*, 2023 WL 2655485, at *3 (D. Del. Mar. 27, 2023) ("Thus, plaintiffs allege the circumstances constituting the mistake with sufficient particularity: we know what was said (the 50%-payout provision would be removed and their debt would convert to shares), when it was said (late August 2019), who said it (Movva), and how and where it was said (by email)."). I will dismiss airSlate's Counterclaim Counts I and II.

## B. Counterclaim Count III

airSlate alleges breach of the Settlement Agreement's confidentiality provision (Section 5) based on Inkit's failure to redact information, other than Inkit's banking information, in its public filing of the Settlement Agreement as an exhibit to the Complaint. (D.I. 20 ¶¶ 29–31; *see* D.I. 7). airSlate notes, as an example, that Inkit failed to redact the settlement payment amount between the parties. (D.I. 29 at 14). Inkit argues that disclosure of the Settlement Agreement during the present litigation is not governed by Section 5, but by Section 6, the "Specific Performance; Injunction" provision. (D.I. 23 at 18).

Section 6 discusses admissibility of the Settlement Agreement and the parties' abilities to enforce and seek remedies under the Settlement Agreement. (*See* D.I. 3 § 6). On its face, it does not discuss confidentiality or otherwise indicate that it supersedes Section 5's confidentiality requirements, except to the extent needed for admissibility or enforcement purposes. (*See id.*). Inkit does not argue that the settlement payment falls under this category. Read in the light most favorable to airSlate, Section 5 governs Inkit's filing of the Settlement Agreement. I also cannot agree with Inkit's assertion that the level of redactions in its filing, including leaving the settlement payment amount unredacted, was necessarily required by the Court's policy.[1] *See Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 511 (D. Del. 2012) ("[T]erms that relate to pricing, valuation, monetary payments, and financial information should be protected."); *see also*

---

[1] The Court's policy on redactions is based on balancing the public's interest in access against the parties' interest in non-disclosure rather than rigid rules setting forth clearly defined requirements of which redactions should be made. *See In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 672–73 (3d Cir. 2019) ("The common law right of access is not absolute. The presumption of access is just that, and thus may be rebutted. The party seeking to overcome the presumption of access bears the burden of showing that the interest in secrecy outweighs the presumption." (citations omitted) (cleaned up)). To the extent that Inkit argues that the public right of access outweighs in the present scenario, it would be premature to make that determination as neither party presents any discussion on the matter.

*LiTL LLC v. HP Inc.*, No. 23-120-RGA, D.I. 82 (granting the parties' motion to redact settlement payment amount from hearing transcript).

Inkit argues that airSlate's counterclaim should be dismissed because it failed to redact its answering brief, which quoted and discussed specific terms of the Settlement Agreement. (D.I. 32 at 7). I do not find this argument persuasive as airSlate's briefing addresses terms which are relevant to adjudicating the parties' dispute and which appear to implicate the parties' more confidential information to a lesser degree. *See Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 511 (D. Del. 2012) ("[N]ot all terms of the agreements that underlie this dispute are created equal."). More importantly, airSlate cites only terms already disclosed in Inkit's filing.

The pleadings provide the reasonable inference that Inkit breached the Settlement Agreement by failing to redact confidential information. I will not dismiss airSlate's Counterclaim Count III.

**C. Equitable Defenses**

airSlate asserts, as its first affirmative defense, "the doctrines of unclean hands, estoppel, waiver, laches, acquiescence, consent, ratification, justification, trademark misuse, and/or other theories of equity." (D.I. 20 at 9). Inkit argues that airSlate's pleading of its waiver, estoppel, and unclean hands defenses fails to comply with the Rule 9(b) standard. (D.I. 23 at 19 (citing *Bench Walk Lighting LLC v. Everlight Elecs. Co.*, 2020 WL 5128086, at *1 (D. Del. Aug. 31, 2020) ("[T]he equitable affirmative defenses of waiver, estoppel, and unclean hands must be plead with particularity under Rule 9(b)."))). airSlate agrees that it must comply with Rule 9(b), but argues that it has plead its defenses with the requisite level of particularity. (D.I. 29 at 15).

airSlate bases its waiver, estoppel, and unclean hands defenses on "Plaintiff's use of misleading metadata on its own website," "material[] represent[ations] to Counterclaim Plaintiff

7

by Counterclaim Defendant that the primary objective of the settlement agreement was to avoid future litigation and expenditures of fees in exchange for a notice and cure period wherein the parties would, in good faith, notify each other of any future concerns, and aim to resolve them without litigation," and that "Plaintiff knew the parties' intent regarding the Settlement Agreement was to provide for notice of any alleged violation and an opportunity to cure to prevent unnecessary litigation and, proceeded with a lawsuit in spite of that knowledge." (D.I. 29 at 16; *see* D.I. 20 at 9). airSlate fails to adequately plead any of the remaining "essential factual background" regarding the circumstances under which Inkit's representations were made. *In re Rockefeller*, 311 F.3d at 217. For example, the Amended Answer does not allege "where" or "how" Inkit's representations were made, and only describes the "who" as Inkit generally and the "when" as "during the course of the parties' settlement discussions." (D.I. 29 at 16; *cf. Ajay*, 2023 WL 2655485, at *3). I will strike airSlate's waiver, estoppel, and unclean hands defenses as they are based on fraud/misrepresentation without complying with the Rule 9(b) standard. As Inkit does not address the laches, acquiescence, consent, ratification, justification, and trademark misuse defenses, I decline to strike airSlate's first affirmative defense in its entirety.

## IV.   CONCLUSION

For the foregoing reasons, Inkit's motion to dismiss and strike (D.I. 22) is GRANTED IN PART and DENIED IN PART.

The motion to dismiss Counterclaim Counts I and II is GRANTED.

The motion to dismiss Counterclaim III is DENIED.

The motion to strike airSlate's first affirmative defense is GRANTED as it relates to the waiver, estoppel and unclean hands defenses and DENIED as it relates to the remaining equitable defenses.

I will grant airSlate leave to amend.[2]

IT IS SO ORDERED.

Entered this 2nd day of August, 2024

_____
United States District Judge

---

[2] I note that airSlate did not request leave to amend, but I nevertheless give it the opportunity to amend its Answer if it concludes it can successfully replead.