## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INKIT, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    C.A. No. 1:23-cv-00793-RGA |
| | : |
| AIRSLATE, INC., | : |
| | : |
| Defendant. | : |
| | : |

### DEFENDANT AIRSLATE, INC.'S OPENING BRIEF IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFF'S EXPERT GLENN NEWMAN UNDER FED. R. EVID. 702 AND *DAUBERT*

| OF COUNSEL: | ___*/s/ M. Claire McCudden*_____ |
|---|---|
| | M. Claire McCudden (DE Bar No. 5036) |
| Gregor Hensrude (admitted *pro hac vice*) | **MARSHALL DENNEHEY, PC** |
| Petra N. Ambrose (admitted *pro hac vice*) | 1007 N. Orange Street, Suite 600 |
| **KLINEDINST PC** | Wilmington, DE 19899 – 8888 |
| 1200 Fifth Avenue, Suite 1750 | Tel:  302.552.4354 F: 302.552.4340 |
| Seattle, WA 98101 | MCMcCudden@MDWCG.com |
| Tel: (206) 672-4400 | |
| ghensrude@klinedinstlaw.com | |
| pambrose@klinedinstlaw.com | |
| | *Attorneys for Defendant airSlate, Inc.* |

Dated:  February 12, 2025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................ii

NATURE AND STAGE OF PROCEEDINGS ..................................................1

SUMMARY OF THE ARGUMENT ...................................................................1

STATEMENT OF FACTS ....................................................................................2

APPLICABLE LEGAL STANDARDS ..............................................................8

    A.  Federal Rule of Evidence 702 ...............................................................8

    B.  *Daubert* Standard ...................................................................................9

ARGUMENT ........................................................................................................10

    A. MR. NEWMAN'S OPINIONS SHOULD BE EXCLUDED
        AS UNRELIABLE ................................................................................10

    B. MR. NEWMAN'S OPINIONS SHOULD BE EXCLUDED
        AS LACKING "FIT" IN THIS CASE,  BECAUSE THEY
        WOULD NOT ASSIST A JURY ..........................................................16

    C. EVEN IF MR. NEWMAN'S OPINIONS PASS THE "RELIABILITY"
        AND "FIT" REQUIREMENTS, THOSE OPINIONS ARE SUBJECT
        TO EXCLUSION BASED ON FED. R. EVID. 403.............................17

CONCLUSION .....................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*American Cruise Lines, Inc. v. HMS American Queen Steamboat Company LLC*,
No. 13-cv-324 (RGA), 2017 WL 3528606..................................................................9, 16

*Benjamin v. Peter's Farm Condominium Owners Ass'n*., 820 F.2d 640 (3d Cir.1987)............2, 12

*Calhoun v. Yamaha Motor Corp*., 350 F.3d 316 (3d Cir. 2003) ....................................................10

*CareDx, Inc. v. Natera, Inc*., No. 19-662, 2021 WL 1840646 (D. Del. May 7, 2021) ................13

*Crystal Lagoons U.S. Corp. & Crystal Lagoons Technologies In*c. *v. Cloward H2O LLC &
    Pacific Aquascape International, Inc.,* No. 2:19-CV-00796-RJS-DAO,
    2025 WL 384995 (D. Utah Feb. 4, 2025)...................................................................9

*Daubert v. Merrell Dow Pharma., Inc*., 509 U.S. 579 (1993).................................................*passim*

*Elcock v. Kmart Corp*., 233 F.3d 734, 755-56 (3d Cir. 2000) .................................................12, 16

*In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717 (3d Cir. 1994) ....................................1014, 16, 17

*Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)......9

*Lontex Corp. v. Nike, Inc.*, No. CV 18-5623, 2021 WL 1145904 (E.D. Pa. Mar. 25, 2021) .........8

*Meadows v. Anchor Longwall & Rebuild, Inc*., 306 F. App'x 781 (3d Cir. 2009) .......................16

*Paramount Fin. Commc'ns, Inc. v. Broadridge Inv. Commc'ns Sols., Inc*., 684 F.
    Supp. 3d 316 (E.D. Pa. 2023 ..................................................................................16

*Pineda v. Ford Motor Co*., 520 F.3d 237 (3d Cir. 2008)..............................................................16

*Salvitti v. Lascelles*, No. CV 19-00696, 2022 WL 1766934 (E.D. Pa. June 1, 2022) ..................13

*Schneider v. Fried*, 320 F.3d 396 (3d Cir. 2003)............................................................................9

*Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408 (3d Cir. 2002) ............................................9

*United States v. Downing*, 753 F.2d 1224, 1240 n. 21 (3d Cir. 1985) ...................................10, 14

**<u>Rules</u>**
Fed. R. Evid. 403 ...........................................................................................................17
Fed. R. Evid. 702 ...................................................................................................8, 9, 16
Fed. R. Evid. 703 ...........................................................................................................14

ii

## NATURE AND STAGE OF PROCEEDINGS

Defendant airSlate, Inc. ("Defendant" or "airSlate"), by and through its counsel of record, hereby respectfully submits this Opening Brief in Support of its Motion to Exclude Plaintiff's Expert Glenn Newman pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Trial is scheduled for March 31, 2025.

## SUMMARY OF THE ARGUMENT

Inkit's expert Glenn Newman should be stricken as an expert pursuant to the Court's gatekeeping function, because he improperly concluded that Inkit is able to disgorge <u>at a minimum $6 million, and up to $25 million, consisting of **all** of airSlate's revenues for its SignNow product</u> over three separate time periods. As the Court has noted in the past, this is a case which involved minimal infringement (if any) over a short period of time, with minimal damages (if any). Despite the Court's astute observations, Newman's opinions are not based on sound reasoning, and make inappropriate assumptions that would be misleading and not helpful to a jury, and disregard highly relevant evidence.

Newman inexplicably disregarded numerous sources that he could have (but refused) to use to "whittle down" airSlate's SignNow revenues, the most important of which is a Google analytics spreadsheet showing that the seven webpages at issue generated zero "conversions." A conversion consists of signing up for a free trial or subscribing to the SignNow service. This is the most direct evidence that airSlate did not generate any revenue for the seven webpages at issue, yet Newman completely ignored this data.

Newman also failed to understand and/or ignored that only seven webpages were at issue, that airSlate published tens of thousands of advertisements on its website, and that airSlate also had over 120 other competitors for which it publishes similar advertisements on its website.

Instead of attempting to reduce this astronomical and unreasonable damages calculation to account for the small proportion of ads at issue, and while acknowledging that these ads were generated for only one of its over 120 competitors, Newman kept falling back on his desire to review customer-specific sales data (which this Court has ordered airSlate need not produce, as it would be disproportionate to the needs of the case).

Newman's report and any related testimony, then, is unreliable and does not "fit" the case, and should thus be excluded. Furthermore, his report and related testimony, even if deemed relevant, has an inordinately high chance of confusing a jury, which will not be properly equipped to perform an analysis as to deductions of between $6 million and $25 million of airSlate's revenues for its signNow product. Newman should be excluded as an expert as his calculations and opinions are a "castle made of sand" especially prone to exclusion. *See Benjamin v. Peter's Farm Condominium Owners Ass'n*., 820 F.2d 640, 643 (3d Cir.1987)

## STATEMENT OF FACTS

Inkit, Inc. ("Inkit") has retained expert Glenn Newman to address Inkit's alleged damages as a result of the alleged conduct. *See* Newman Report, p. 2, ¶ 5. Newman was retained to quantify Inkit's potential recovery <u>solely</u> in the form of disgorgement of Defendant's profits, which he also referred to as recovery of "ill-gotten gains" received from  "unlawful sales." Newman Depo. at 44:11-18.; 61:12-62:3; 74:9-75:3 ; Newman Report, ¶26.

### 1. Mr. Newman's Limited Review and Investigation

During his deposition, Newman demonstrated a fundamental misunderstanding of the limited number of webpages at issue in this case, and blindly relied upon Inkit's counsel in making various assumptions not supported by law or fact. For instance, Newman was not aware that the purported infringing activity in this case is limited to <u>just seven webpages</u>. *See generally* Compl.,

D.I. 2.  Instead, he assumed the Complaint's depictions of the seven webpages at issue were mere *examples* of purported infringing activity.  Declaration of Petra N. Ambrose in Support of Daubert Motion regarding Glenn Newman ("Ambrose Decl."), Ex. A, Deposition of Glenn Newman ("Newman Depo."), at 59:22-60:7; *see also* Compl.

As further evidence that Newman did not perform a proper investigation to inform his opinions in this case, prior to drafting his report, Mr. Newman only spoke with representatives of Inkit on one occasion, for 20-25 minutes, and had not reviewed Inkit's Rule 30(b)(6) representative's deposition transcript.  Newman Depo. at 47:11-48:4.

### 2.  Mr. Newman's Request for Individual Customers Sales Data Was Denied by this Court

During his deposition, Newman kept falling back on airSlate's failure to produce customer lists and customer-specific sales data.  As the Court will recall, the Court denied Inkit's request for customer lists and this type of sales related data in the parties' discovery dispute.  Ambrose Decl., Ex. B, Hearing Tran., Aug. 27, 2024, at 13:8-14:4.  There was no overlap between Inkit's customers and airSlate's customers, and so airSlate did not produce any such customer list (in accordance with the Court's order).  Ambrose Decl., Ex. B, Hearing Tran., Aug. 27, 2024, at 13:8-14:4; Ex. C, airSlate's Answer to Inkit's Third Set of Interrogatories.

Despite the Court's order, Newman testified that he needed customer names, dates of sale, invoices for each sale, and customer-specific sales data (including revenue generated by each individual customer), to properly calculate airSlate's "ill-gotten" profits.  Newman Depo. at 67:19-23; 68:6-10; 68:15-24; 72:1-13; , .  He even went so far as to say that he needed a record of every sale to every customer that was ever made during the relevant time period, to evaluate whether

airSlate made any profits in this case.  *Id.*, at 69:21-70:10.[1]  Newman appeared to be at least a limited awareness of the court's ruling on this discovery dispute.  *Id.* at 71:12-24.

### 3.  Newman Improperly Assumes <u>All</u> Revenues Were Generated Due to Defendant's Purported "Illegal Use and Display of Inkit's Mark"

Despite this ruling, Newman concluded in his report,  "Due to the lack of detailed sales data showing sales by date, specific customer and original purchase history, I necessarily rely on the following assumptions…[including] **Revenues from the SignNow product line as reported during the relevant claim periods were generated due to Defendant's illegal use and display of Inkit's Mark**."  Newman Depo., at 89-90; Ambrose Decl. Ex. D, Newman Report. ¶43; *see also* SignNow monthly revenue data; Ambrose Decl. Ex. D, ¶28; Ambrose Decl. Ex. E (SignNow monthly revenue data).   The revenues that Newman concluded were subject to disgorgement, based on three separate potential timelines, is between $6.6 million and $24.7 million.  Ambrose Decl. Ex. D, Newman Report, at 17-18, ¶52; *see also* Ambrose Decl. Ex. E (Ex. 8 to Newman Depo., Monthly Revenues for SignNow product).

Indeed, Newman testified **"[s]o I'm not getting into the weeds in terms of which particular actions are lawful or unlawful.** Again, the assumption of liability is a **blanket liability assumption**. …Otherwise, my report unfortunately is not meaningful otherwise."  Newman Depo., at 96:8-15 (emphasis added).  When asked how he made the assumption that all of SignNow's revenues during any particular time period was generated from the seven web pages at issue, he stated he was not asked "to perform any analysis as to what particular revenues were generated from these particular seven web pages."  and **that he was not asked to provide an analysis of "fact and circumstance-specific…indicators for what made use of a trademark**

---

[1] Newman did not know whether airSlate kept such sales-related data, but speculated that they did, "I **would suspect**, if they are filing tax returns in the United States, they probably would keep [such sales-related data]."  *See* Newman Depo., at 73:15-19 (emphasis added).

**versus other revenues that might have been received that are unrelated to the trademark or the false advertising.**" Newman Depo, at 95-96; 98-99 (emphasis added)..

When asked what he would do in a hypothetical situation to determine those specific revenues, he reverted, including customer sales data and IP addresses. *Id.*, at 96-97; 106-107. Mr. Perchyts, however, testified he never attempted to obtain IP addresses of users who visited the Seven Webpages because he was never asked, and also stated he did not believe Google would provide that data. Ambrose Decl. Ex. I.

### 4. Newman Improperly Ignored Highly Relevant Google Analytics User Data, SignNow Subscription Prices, and That airSlate Has Over 120 Other Competitors For Which It Generates Similar Ads

Google analytics spreadsheet reflect that approximately 254 users visited the Seven Webpages at issue, again concluding he needed IP addresses to determine whether they were unique users, among other invalid reasons. Newman Depo. at 155-156; 159-161; Ambrose Decl. Ex. F (Ex. 13 to Newman Depo, Google Analytics spreadsheet). Newman failed to consider reducing gross revenues based on airSlate's over one hundred thousand customers, in comparison to the 254 users who visited the Seven Webpages at issue (as reflected on the analytics spreadsheets). Newman Depo. at 159-160. Newman also reviewed but ignored various other potential sources of sales-related revenue, including for instance calculating revenues based on review of number of visitors to the webpages at issue, and the various subscription types offered by airSlate . *Id.*; *see also* Newman Depo., at  72:19-73:7. Newman acknowledged that airSlate had approximately 120 competitors, and that airSlate had created ad campaigns against all competitors to compare their services to airSlate's SignNow product. Newman Depo. at 102:15-104:14; Ambrose Decl. Ex. G, at 1-3 (list of airSlate's competitors to its SignNow product). He did not, however, make any attempt to allocate revenues generated for the Seven Webpages at

issue even though he acknowledged "**you might be able to draw some kind of calculation** (sic)". Newman Depo., at 101-104 (emphasis added); *id.* at 106-107; Ambrose Decl. Ex. G (Ex. 9 to Newman Depo., list of airSlate's competitors and ad campaigns)

### 5. Newman Ignored Other Sources of airSlate's Revenue

Most notably, in calculating causal revenues from the purportedly infringing Seven Webpages, Newman **ignored** airSlate's produced Google analytics spreadsheet, which indicates that there were no conversions for all visits to the Seven Webpages. Newman Depo., at 116-119; 120-121; 134:17-22 (including "I looked at [the google analytics spreadsheet] so I considered it. I didn't necessarily rely upon it for any of my opinions"); *id.*, at 195:195:11-13 ("I'm not able to connect the dots from the airSlate schedule of monthly SignNow revenues to seven web pages")[2]; Ambrose Decl. Ex. F (Conversions). The two actions that airSlate asked Google to track were someone signing up for a product trial, or a "paid" conversion, "someone who is putting money down and making a transaction." Newman Depo. at 134:17-22; Ambrose Decl., Ex. H (Ex. 15 to Newman Depo). Mr. Newman admitted that he did not rely upon the google analytics spreadsheet for any of his opinions, which he justified by stating he recalled testimony by airSlate that a potential customer might have come back to the webpage, which would not be reflected as a "conversion" on such a spreadsheet. Newman Depo., at 134:10-135:11; 136:12-14; 137:5-11. AirSlate's representative, however, did not testify to any such customers who had actually come back to the web pages, and Newman acknowledged he did not have any evidence to suggest the same. *Id.*, at 138:7-139:8;

---

[2] Newman attempted to justify his opinion that the zero conversions data was unreliable based on another unrelated case in which conversions were not properly captured in a google analytics spreadsheet, stating "I have some experience outside of this case, where I have seen Google's listing and found out that they don't list conversions, at least with respect to my other case, **I can't speak for this one**[.]". Newman Depo., at 119-120; *see also id.*, at 121:14-20 (indicating he did not have any information to suggest that airSlate did not ask Google not to track conversions).

6

**6.  Newman Did Not Consider the Required Causal Connection to Establish Inkit's "Ill-Gotten Gains" to calculate airSlate's Purported "Unlawful Sales"**

Newman concluded that <u>all revenues</u> that airSlate generated in a certain timeframe could be disgorged by Inkit, boldly concluding "**the monthly sales summary [for its SignNow product] produced by airSlate represents unlawful sales subject to disgorgement**."[3]  Ambrose Decl. Ex. D, Newman Report, p. 9, ¶28 (emphasis added); *see also* Newman Depo at 89:12-90:19; Ambrose Decl. Ex. I (AIRSLATE 0000625, SignNow monthly revenue).

In calculating disgorgement of Defendant's profits, which Newman also defined as recovery of "ill-gotten gains" received from   "unlawful sales,"   Newman evaded questions regarding whether a causal connection was required between the unlawful use and profits made. Newman Depo. at 76:1-77:3; 147-150.  He did, however, acknowledge "Well, in general, **I think it is not proper to include a hundred percent of all of a company's revenues, in the event that one aspect may have been unlawfully utilized. I would agree to that**."  *Id.*, at 78:4-8 (emphasis added).

Notably, Newman testified as follows:

> [All of SignNow revenue] is the starting point for the unjust revenues, and then the Defendant has -- presumably, they have control of their own records, **I don't have their records, to try to whittle it down to those sales that are unjust or at least a portion of the sales that represent unlawful sales. And there may be a variety of reasons why those revenues occurred. One of them might be the unlawful use**. There might be other reasons, but it is up to the Defendant, as I understand the requirements, to apportion those back down to going from the gross sales down to the sales that might be recoverable.

Newman Depo at 87:24-88:13 (emphasis added).

---

[3]      *Id.* at p. 9.

7

Newman also erroneously stated he would expect a Defendant to "whittle down" which customers "did not belong" to the total revenue count," stating "as I understand it, it is the Defendant's obligation to quantify those amounts that should be apportioned out of that calculation" and "there could be 20 to 30 different reasons why certain revenues wouldn't belong in there[.]"  Newman Depo., at 92:22-93:15.

### 7.  Newman Made No Attempt to Deduct Costs from Revenues

Newman made no attempt to deduct costs from the purported sales, which he acknowledged is required to properly calculate profits.  Newman Depo., at 80:1-20; Newman Report, ¶26.  AirSlate testified during his deposition that it did not track costs by product line.

Newman did review AirSlate's audited consolidated financial statements, which provided a separate line item for advertising costs, but he made no attempt to extrapolate the proportion of advertising costs to revenues in the consolidated statements, to the revenues generated by airSlate's SignNow product.  Newman Depo. at 83:10-84:2, 170-171, 177-78; Ambrose Decl. Ex. J (Ex. 10 to Herring Depo., Consolidated Financial Statements), at AIRSLATE0000733.

## APPLICABLE LEGAL STANDARDS

**A**.    Federal Rule of Evidence 702

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  *Lontex Corp. v. Nike, Inc.*, No. CV 18-5623, 2021 WL 1145904, at *3 (E.D. Pa. Mar. 25, 2021)(citing Fed. R. Evid. 702).  Fed. R. Evid. 702 was amended on December 1, 2023, to reflect a change from the previous rule, that the proponent must show, more likely than not, that the expert is qualified, stating as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

Fed. R. Evid. 702 (emphasis added). The Advisory Committee's Note expresses that the amendments were put into place to "clarify and emphasize" the applicable burden of proof and the admissibility criteria. Advisory Committee Note, Fed. R. Evid. 702.

One federal court has stated "[r]ecent amendments to Rule 702 were meant to clarify that there is no presumption of admissibility with respect to expert testimony." *Crystal Lagoons U.S. Corp. & Crystal Lagoons Technologies In*c. *v. Cloward H2O LLC & Pacific Aquascape International, Inc.,* No. 2:19-CV-00796-RJS-DAO, 2025 WL 384995, at *3 (D. Utah Feb. 4, 2025) (citing advisory committee's note). Instead, to be admissible, the proponent of the expert evidence bears the burden to demonstrate it is more likely than not that Rule 702's requirements are satisfied. *Id.*

## B.    *Daubert* Standard

"[T]he district court acts as a gatekeeper" to ensure that expert testimony is reliable and helpful. *American Cruise Lines, Inc. v. HMS American Queen Steamboat Company LLC*, No. 13-cv-324 (RGA), 2017 WL 3528606, at *2 (quoting *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). "The primary locus of this obligation is [Federal Rule of Evidence] 702 ...." *Daubert v. Merrell Dow Pharma., Inc*., 509 U.S. 579, 589 (1993). It is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record. *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002). *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), extended the rigorous

9

gatekeeping function assigned to trial judges by *Daubert* to cases involving non-scientific testimony. *See Kumho*, 526 U.S. at 141.

Rule 702 codified the Supreme Court's holding in *Daubert*. *Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 320 (3d Cir. 2003). *Daubert* has a "trilogy" of requirements for expert testimony: (1) qualification, (2) reliability, and (3) fit. *American Cruise Lines*, 2017 WL 3528606, at *2 (citing *Schneider*, 320 F.3d at 404).[1] Daubert's trilogy of requirements must be met by a preponderance of the evidence. *Id.* (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)).

## ARGUMENT

### A.    MR. NEWMAN'S OPINIONS SHOULD BE EXCLUDED AS UNRELIABLE

"[A]n expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *Paoli*, 35 F.3d at 742. "When there is a serious question of reliability of evidence, it is appropriate for the court to exercise to some degree an evidentiary screening function." *Paoli*, 35 F.3d at 743 (quoting *United States v. Downing*, 753 F.2d 1224, 1240 n. 21 (3d Cir. 1985). Although methodological deficiencies in a survey generally relate to weight of the evidence rather than to its admissibility, when deficiencies are so substantial that they render the conclusions untrustworthy, courts should exclude the same from evidence. *J & J Snack Foods*, 220 F.Supp.2d 358.

### 1.    Newman's Opinions Ignores Key Facts Relating To Damages and Makes Improper Assumptions

---

[1] Rule 702 imposes three requirements for admissibility of expert testimony: "(A) the proffered witness must be an expert, i.e., must be qualified; (B) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (C) the expert's testimony must assist the trier of fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008).

An expert's opinion is reliable if it is "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir.1994)(quoting *Daubert*, 509 U.S. at 589). Newman's opinions in this case do not meet that standard.  They are unreliable and improper, because he ignored data in the record that shows no conversions were made from the Seven Webpages, meaning airSlate did not profit from them.  He also made improper assumptions in reaching his conclusion that disgorgement of all of airSlate's profits for the SignNow product was proper.  Additionally, he was not aware that the purported infringing activity in this case is limited to just seven webpages.

Despite unrefuted data showing that airSlate did not generate any revenue from the ads, Newman concluded that all of the millions of dollars of airSlate's revenue for its SignNow product is subject to disgorgement, based on his admitted assumption that all such revenues were wrongfully obtained.  Newman did testify that he could have hypothetically whittled down that number if there was evidence to support that some of the revenues did not relate to the purportedly illegal ads at issue, but he testified that he ignored such evidence every step of the way.

For instance, Newman failed to utilize other data that would have "whittled down" the raw revenue numbers,  such as utilization of the SignNow subscription fees, the number of visitors that visited the Seven Webpages at issue, and somehow calculating revenues from those numbers.  He also failed to consider calculating proportionate revenues by allocating a certain percentage based upon airSlate's 120+ competitors for which it published similar advertisements.

Additionally, Newman testified that he was not instructed to perform any type of causation analysis as to whether the revenues he relied upon were tied to the purportedly illegal ads at issue.

11

Disgorgement of all of the SignNow revenue is simply untenable and not based upon sound economic analysis of available evidence.

Most notably, Newman's report neither discusses nor references the Google Analytics data showing visits and conversions relating to the at-issue ads, thereby ignoring this key evidence that proves airSlate did not generate any revenue from the ads. He testified that he reviewed but did not rely upon such evidence based upon speculation that the conversions may not be accurate, and that additional visitors may have signed up for SignNow services after first seeing the ad (which would not have been tracked). Newman's testimony should thus be excluded as unreliable because it ignores key facts in order to render a one-sided biased damages opinion, and makes improper assumptions and leaps.

There is ample authority in the Third Circuit excluding similar expert opinions or testimony that are lacking foundation in the record and/or make improper assumptions. In *Elcock v. Kmart Corp.*, 233 F.3d 734 (3d Cir. 2000), the Third Circuit held that testimony of an economist regarding lost future earnings was based on assumptions wholly without foundation in the trial record, and was thus improperly admitted. The Court held the expert had inflated each of these figures in rendering his expert opinion, and in doing so, rested his damages opinion on assumptions lacking foundation in the record.

In *Benjamin v. Peter's Farm Condominium Owners Ass'n.*, 820 F.2d 640, 643 (3d Cir.1987), the expert relied solely on the plaintiff's personal assessment of his ability to re-enter the work force in assuming that the injured plaintiff would make only $10,000 a year as a result of the injuries he sustained. 820 F.2d at 642-43. The Court held this assumption, absent "sufficient factual predicates," id. at 642, was a "castle made of sand," id. at 643 (internal quotation marks

12

omitted). In so doing, the Court set aside a jury verdict for the plaintiff, because the district court failed to exclude the expert opinion that relied on this flawed assumption. *See Id*.

In *CareDx, Inc. v. Natera, Inc*., No. 19-662, 2021 WL 1840646, at *3 (D. Del. May 7, 2021), a case involving allegations that the defendant falsely advertised their kidney transplant test as superior to the plaintiff's kidney transplant test, the plaintiff sought to introduce an expert to establish the cost of corrective advertising efforts. The expert relied solely on the deposition testimony of plaintiff's CEO to calculate the costs of corrective advertising. *Id.* at *2-*3. During the CEO's deposition, the CEO explained that it spent approximately $30 million on marketing, sales, and investor relations, and approximately 60-70% of that $30 million was directed towards defending against the defendant's advertising claims. *Id*. at *3. The plaintiff's expert then reported that the plaintiff incurred $18-$21 million in corrective advertising costs, because "$30m * 0.6 = $18m. $30m * 0.7 = $21m." *Id*. The *CareDx* court excluded the calculations finding that they were not specialized findings and they would not help the trier of fact. *Id*. The court found that the opinions were not reliable because "[t]hey were not reached by application of a scientific method or procedure and the underlying rough data supplied by [the CEO's] testimony does not provide a reliable basis on which to make a scientific opinion." *Id*.

In *Salvitti v. Lascelles*, No. CV 19-00696, 2022 WL 1766934, at *6 (E.D. Pa. June 1, 2022), the Court excluded an expert's opinion and testimony, because in rendering his opinion, the expert should have either relied upon or distinguished the relevant deposition testimony and a declaration. If the expert had done so, the Court concluded his report would have provided a more complete picture of the LLC's accounting practices.  The Court concluded there were several issues with respect to the reliability of the report, including that the report had failed to consider pertinent

13

information. The Court also concluded the report would not aid in assisting the trier of fact to understand the evidence and issues in the case.

### 2. Newman Relies Upon Non-Existent Speculative Evidence, and Also Claims He Needs Evidence That the Court Has Not Ordered AirSlate to Produce

During his deposition, Newman kept falling back on airSlate's failure to produce customer lists and customer-specific sales data, and claimed he could not whittle down the data any further on this basis. As the Court is aware, the Court denied Inkit's request for customer lists and this type of sales related data in the parties' discovery dispute. Mr. Newman's improper reliance upon undiscoverable evidence that is not part of the record is not in compliance with Fed. R. Evid. 703. Furthermore, although the data or facts underlying an expert's opinion need not be admissible, the expert opinion must have some basis in the record; otherwise, it is neither helpful nor relevant to the issues in the case. *Paramount Fin. Commc'ns, Inc. v. Broadridge Inv. Commc'ns Sols., Inc.*, 684 F. Supp. 3d 316, 341 (E.D. Pa. 2023).

The sales data is evidence that is not, and never will be, in the record. Accordingly, Newman's improper reliance on this evidence to conclude all revenues must be disgorged, is in violation of Fed. R. Evid. 703 and his opinions and testimony should be excluded.

### 3. Newman's Opinion Testimony Sets Forth Unreliable Interpretation Of Selective Evidence

"[A]n expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *Paoli*, 35 F.3d at 742. "When there is a serious question of reliability of evidence, it is appropriate for the court to exercise to some degree an evidentiary screening function." *Paoli*, 35 F.3d at 743 (quoting *United States v. Downing*, 753 F.2d 1224, 1240 n. 21 (3d Cir. 1985).

14

Inkit's expert cannot support an opinion on the profits subject to disgorgement with an assumption that all of the profits are unlawfully gotten when the evidence does not support this assumption. Newman concedes that he assumed, purportedly due to insufficient data, that all of airSlate's signNow profits were the result of the alleged conduct. However, the evidence on the record shows that airSlate obtained no conversions (i.e. no money was put down by customers) in response to the at-issue ads. Without evidence that the profits airSlate made from signNow during the relevant timeframe actually came from the at-issue ads, Newman fails to explain why his assumption is proper.

Newman's report therefore applies unreliable and unsupported methodologies in a results-driven manner, relying on blanket assumptions that are contradicted by data in the record. Newman's opinion does not withstand scrutiny under *Daubert* and must be excluded.

### 4. Newman Made No Attempt to Deduct Costs

Newman sets out methodologies for calculating damages as the profits airSlate obtained through the alleged wrongful conduct. He elaborates that to calculate the profits, the revenues are offset against the costs and expenses relating to the ads. Newman, however, does not actually apply the methods he sets out. Instead concludes that all of airSlate's revenues are subject to disgorgement based on his unsupported assumption that they were obtained through the alleged wrongful conduct. Moreover, Newman concludes no reduction based on costs and expenses is needed without taking into account the costs and expenses in discovery. Newman's opinions do not properly apply the methodologies he sets forth and should therefore be excluded.

Newman also fails to explain why he did not reduce damages amounts by deductible costs despite evidence, including advertising costs contained on airSlate's consolidated statement, and calculating a pro-rata amount of advertising costs for the corresponding SignNow revenue.

Newman Depo., at 80, 83-84, 87-88.  In doing so, Newman does not even employ his own unjust enrichment/disgorgement of profits calculation in its simplest form,[4] and his report should accordingly be excluded as unreliable.  Ambrose Decl. Ex. D, Newman Report, at 9 ¶¶26-27.

### B.     MR. NEWMAN'S OPINIONS SHOULD BE EXCLUDED AS LACKING "FIT" IN THIS CASE,  BECAUSE THEY WOULD NOT ASSIST A JURY

For expert testimony to be admitted, it must be capable of "help[ing the jury to] understand the evidence or to determine a fact in issue...." *American Cruise Lines*, at *3 (quoting Fed. R. Evid. 702); *see also .Pineda v. Ford Motor Co*., 520 F.3d 237, 244 (3d Cir. 2008).  This "fit" requirement asks whether the proffered testimony is sufficiently helpful.  *American Cruise Lines*, at *3 (citing *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.").  An expert's testimony fits the case if the testimony will "assist the trier of fact." *Lontex*, 2021 WL 1145904, at *4 (quoting *Paoli*, 35 F.3d at 743); *see also .Pineda* 520 F.3d at 244 (3d Cir. 2008)(including a requirement that "the expert's testimony must assist the trier of fact.")

In order for expert testimony to be "helpful," it must be supported by the record. *Paramount Fin. Commc'ns, Inc. v. Broadridge Inv. Commc'ns Sols., Inc*., 684 F. Supp. 3d 316, 341 (E.D. Pa. 2023) (citing *Elcock v. Kmart Corp*., 233 F.3d 734, 755-56 (3d Cir. 2000); *Meadows v. Anchor Longwall & Rebuild, Inc*., 306 F. App'x 781, 790 (3d Cir. 2009) ("[E]xpert testimony based on assumptions lacking factual foundation in the record is properly excluded.").  "The 'ultimate touchstone is helpfulness to the trier of fact, and with regard to reliability, helpfulness turns on whether the expert's technique or principle [is] sufficiently reliable so that it will aid the jury in reaching accurate results.' " *In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 744 (3d Cir.

---

[4] "In its simplest form, unjust enrichment is calculated as airSlate's unjust sales, less its deductible costs associated with achieving the unjust sales."  Ambrose Decl. Ex. D, Newman Report, at 9, ¶26.

1994)(citation omitted).   Therefore, "any step that renders the analysis unreliable under the Daubert factors renders the expert's testimony inadmissible." *Id.* at 745.

There are so many steps in the case at bar in Newman's analysis that render his analysis unhelpful to a jury.  The "ultimate touchstone is helpfulness to the trier of fact, and with regard to reliability, helpfulness turns on whether the expert's 'technique or principle [is] sufficiently reliable so that it will aid the jury in reaching accurate results.' " *Paoli,* 35 F.3d at 745 (citations omitted).

A jury would not be assisted in reviewing Newman's report, because it would not help them reach an accurate results.  A jury would have to engage in its own analysis as to what revenues to deduct from net revenues, and would be able to determine SignNow's total net revenues during relevant time frames on its own (without the help of an expert).  This prong of the analysis thus also fails, and Newman's opinions and testimony should be excluded for lack of "fit" and being unhelpful to a jury.

## C.   EVEN IF MR. NEWMAN'S OPINIONS PASS THE "RELIABILITY" AND "FIT" REQUIREMENTS, THOSE OPINIONS ARE SUBJECT TO EXCLUSION BASED ON FED. R. EVID. 403

Assuming an expert meets the requirements of qualification, reliability, and fit, there is still "some room for Rule 403 to operate independently." *American Cruise Lines*, at *3 (quoting *Paoli*, 35 F.3d at 746)(excluding expert report on this basis).  "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Even if the court deems Newman's opinions relevant and admissible, any limited probative value would be substantially outweighed by the strong likelihood of unfair prejudice (extreme inflation of potential damages), confusing the issues and misleading a jury, for the same reasons

17

set forth *supra*.  Without providing some basis for the jury to determine what portions of the net revenue was caused by the Seven Webpages, or some type of an allocation, Newman's opinions would confuse a jury.  He has not provided any type of a road map for a jury to because its assumptions are unsupported by facts and law.  Indeed, Newman assumes that all of airSlate's profits were subject to disgorgement but supports this finding with nothing more than his own assumption.  Newman's opinion on damages is more likely to lead to confusion of a jury by setting forth entirely speculative profits subject to disgorgement.  Newman's opinion testimony should be excluded on this basis.

## CONCLUSION

For the foregoing reasons, airSlate respectfully requests the Court enter an order excluding Plaintiff's expert Glenn Newman from serving as an expert at trial.

Respectfully submitted,

| | |
|---|---|
| OF COUNSEL:<br>Gregor Hensrude (admitted *pro hac vice*)<br>Petra N. Ambrose (admitted *pro hac vice*)<br>**KLINEDINST PC**<br>1200 Fifth Avenue, Suite 1750<br>Seattle, WA 98101<br>Tel: (206) 672-4400<br>ghensrude@klinedinstlaw.com<br>pambrose@klinedinstlaw.com | _/s/ M. Claire McCudden_<br>M. Claire McCudden (DE Bar No. 5036)<br>**MARSHALL DENNEHEY, PC**<br>1007 N. Orange Street, Suite 600<br>Wilmington, DE 19899 – 8888<br>Tel:  302.552.4354 F: 302.552.4340<br>MCMcCudden@MDWCG.com |
| | *Attorneys for Defendant AirSlate, Inc.* |

Dated:  February 12, 2025

DEF Airslate's Daubert MTN - PLF Expert Newman - Inkit v. Airslate (FINAL).DOCX